<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| JUAN RIVERA-PEREZ, | : | |
| | : | Civil Action No. 14-356 (FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| NEW JERSEY STATE PAROLE, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

<u>**Wolfson**</u>, <u>District Judge</u>:

Plaintiff Juan Rivera-Perez ("Plaintiff"), confined at Central Reception and Assignment Facility in Trenton, NJ ("CRAF"), seeks to bring this action *in forma pauperis* pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  The Court has reviewed his application and he will be granted *in forma pauperis* status.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of this Opinion, the Court will assumes all facts as alleged in the Complaint as true and draw all inferences in light most favorable to Plaintiff.  Plaintiff alleges that an unspecified time ago, he was cited erroneously for five violations of his parole by his

parole officer Carlos Perez-Moreno ("Moreno"). (Dkt 1. at 3-4.) He was then sentenced to 12 months imprisonment, followed by 90-180 days at the "Bo Robinson" center ("Bo Robinson").[1] *Id.* at 4. After serving his sentence and being placed at Bo Robinson, Plaintiff alleges that his new parole officer, Kimberly Brickhouse ("Brickhouse"), and his counselor, B. Turner ("Turner"), announced publicly to the other residents of Bo Robinson that Plaintiff was a sex offender. *Id.* at 4, 7. Plaintiff alleges that this placed his life in danger. *Id.* After staying 90 days at Bo Robinson, Plaintiff decided that he was in compliance with the court-mandated sentence and, still fearing for his life, left Bo Robinson on his own accord.[2] *Id.* at 5. Not surprisingly, Plaintiff was cited again for a separate parole violation. *Id.* at 8. Plaintiff was then taken into custody and placed at CRAF while awaiting his parole revocation hearing. *Id.*

After five months of confinement at CRAF, where allegedly Plaintiff was still waiting for his revocation hearing, *id.* at 10, Plaintiff filed the instant Complaint against the New Jersey State Parole Board ("NJSPB"),[3] Moreno, Turner, and Brickhouse for various violations of his constitutional rights. The Court addresses claims against each Defendant individually below.

---

[1]    The Court construes the Complaint to refer to the Albert M. "Bo" Robinson Assessment & Treatment Center in Trenton, NJ. The Center is a halfway house facility that "provide[s] an intensive treatment program that emphasizes relapse prevention and preparation for transfer into a work-release program." The Albert M. "Bo" Robinson Assessment & Treatment Center, http://www.cecintl.com/facilities_rr_nj_002.html (last visited Jan. 28, 2015).

[2]    Although Plaintiff argues that he was not in violation of parole by leaving Bo Robinson on his own accord, *id.* at 8, he nevertheless states that he immediately and voluntarily turned himself into Camden County Police after leaving Bo Robinson. *Id.* at 11.

[3]    The Court construes the alleged Defendant "New Jersey State Parole" as referring to the New Jersey State Parole Board.

## II.    STANDARD OF REVIEW

Per the Prison Litigation Reform Act, Pub. L. No. 104–134, §§ 801–810, 110 Stat. 1321–66 to 1321–77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a plaintiff is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), or a prisoner seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b).  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *Id.*  This action is subject to *sua sponte* screening for dismissal under these statutes because Plaintiff is proceeding *in forma pauperis*, he is a prisoner, and he seeks redress from a governmental entity.

"[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n. 17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v.. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## II.     DISCUSSION

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

### A.  Claims Against NJSPB

The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  As such, the Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Section 1983 does not override a state's Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332, 338 (1979).  This Court has repeatedly held that NJSPB is a state agency for the purposes of the Eleventh Amendment immunity.  *See*, *e.g.*, *Ferguson v. Isabella*, No. 12-2662, 2014 WL 282757, at *3 (D.N.J. Jan. 21, 2014); *Dastas v. Ross*, No. 11-4062 (FLW), 2012 WL 665630, at *1 n.4 (D.N.J. Feb. 29, 2012); *McCargo v. Hall*, No. 11-533, 2011

WL 6725613, at *2 (D.N.J. Dec. 20, 2011); *Davis v. N.J. Dep't of Corr.*, No. 10-6007, 2010 WL 4878748, at *6 (D.N.J. Nov. 23, 2010).

Because Defendant NJSPB is state agency immune from § 1983 suits, all claims against NJSPB will be dismissed without prejudice.

**B.  Claims Against Moreno**

Before addressing Plaintiff's claims against Moreno, the Court finds it helpful to provide a brief legal background on the relationship between § 1983 and the federal habeas corpus statute.  In a series of cases beginning with *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In *Preiser*, state prisoners who had been deprived of good conduct time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release.  *See Preiser*, 411 U.S. at 476.  The prisoners did not seek compensatory damages for the loss of their credits.  *See id.* at 494.  The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  *Id.* at 500.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Court addressed a corollary question to that presented in *Preiser*; whether a prisoner could challenge the constitutionality of his conviction in a suit for damages only under § 1983, a form of relief not available through a habeas corpus proceeding.  Again, the Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486–87 (footnote omitted).  The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487 (footnotes omitted). The Court also held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."  *Id.* at 489–90.

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court applied the lessons of *Preiser* and *Heck* to a state prisoner action, seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits.  Again, the Court emphasized that such a claim is not cognizable under § 1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment,  the disciplinary finding and punishment.  *Id.* at 646–8.

6

"Considering *Heck* and summarizing the interplay between habeas and § 1983 claims, the Supreme Court recently explained that, 'a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of the confinement or its duration.'" *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005)).

Here, while it is not clear what form of relief Plaintiff is seeking with regard to his claims against Moreno, regardless of the relief sought, Plaintiff himself alleges that he has already been sentenced and served a 12-month imprisonment for the parole violations cited by Moreno.  It is reasonable for the Court to assume that the State had afforded Plaintiff the proper due process in determining that Plaintiff violated his parole and giving him a 12-month sentence; indeed, Plaintiff has not made any allegations to the contrary.  Therefore, a favorable outcome of Plaintiff's claims against Moreno would necessarily demonstrate that Plaintiff's confinement by the State was invalid.  As such, Plaintiff is barred from asserting § 1983 claims against Moreno in whatever role Moreno may have played in Plaintiff's 12-month confinement, and Plaintiff's claims against Moreno must be dismissed.

### C.  Claims Against Turner and Brickhouse

Based on Plaintiff's allegations against Turner and Brickhouse, that his status as a sex offender was openly announced to the other residents of Bo Robinson by both Turner and Brickhouse, which in turn placed him in danger, the Court construes Plaintiff's claims against Turner and Brickhouse as violations of the Eighth Amendment for failure to protect.

The Eighth Amendment to the United States Constitution prohibits a State from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has construed the Eighth Amendment as prohibiting "conditions" that involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. *Id.* at 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." *Id.* at 346 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1956)). To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component is contextual and responsive to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *See Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); *Rhodes*, 452 U.S. at 345. What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation. *Hudson*, 503 U.S. at 5.

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," *Farmer*, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety. *Id.* at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents,

but it may be established by much less than proof of a reign of violence and terror." *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985). "Whether . . . prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that . . . prison official[s] knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. *Farmer*, 511 U.S. at 834. When evaluating whether a prison official was deliberately indifferent, a court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." *Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 837).

Here, Plaintiff does not allege sufficient facts to state a valid failure-to-protect claim. Although Plaintiff alleges that his sex-offender status was announced publicly to the other residents, there is no allegation that any such resident confronted Plaintiff with that knowledge. There is also no allegation that any threats or actions were taken against Plaintiff by any such resident. Furthermore, Plaintiff alleges that, despite his subjective fear of harm, he stayed at Bo Robinson for at least 90 days without incident, and the risk or fear of harm is no longer present because Plaintiff has since left Bo Robinson by his own accord. *See Runyon v. Danberg*, No. 12-002, 2012 WL 1657131, at *8 (D. Del. May 9, 2012) (finding that the plaintiff's subjective fear did not trigger a failure-to-protect claim because there was no allegations that other inmates have acted against the plaintiff); *see also Turner v. Bunn*, 107 F.3d 17, 18 (9th Cir. 1997) (holding that a general fear of harm by other inmates does not create a genuine issue of triable fact as to the risk of serious harm); *Davis v. Scott*, 94 F.3d 444, 446-7 (8th Cir. 1996) (same). The Court is not

9

persuaded that Plaintiff has made out a prima facie case that (1) the knowledge by other residents of his status as a sex offender placed him in an obvious risk of harm, and (2) either Turner or Brickhouse knew that their disclosures of Plaintiff's sex offender status would subject Plaintiff to a known risk of harm.  As such, Plaintiff has failed to state a valid claim against Turner and Brickhouse.

### D.  Other Claims

Although Plaintiff makes no claims against any other defendant, the Court will address Plaintiff's remaining due process claims, which could be construed as being made against an applicable NJSPB official or an unnamed parole hearing officer.  Plaintiff alleges that (1) his citation and arrest for violating his parole based on his departure from Bo Robinson was in error, and (2) he has not been afforded the proper procedural due process under state law for the determination of a parole violation.

Plaintiff has failed to state a valid claim against the unnamed official.  First, as noted above, to the extent that Plaintiff is seeking monetary damages for his alleged false arrest and imprisonment, "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Heck*, 512 U.S at 487.  As Plaintiff is still awaiting hearing to determine the validity of his parole violation, his confinement has not been invalidated, therefore there can be no § 1983 liability for monetary damages.  To the extent that Plaintiff is seeking a release from custody, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser*, 411 U.S. at 500.

To the extent that Plaintiff is seeking a court order for an immediate hearing on the status of his parole, the Court construes Plaintiff's claim as a procedural due process claim under the Fourteenth Amendment.  To determine whether state law confers a right that triggers due process protection, the state law must confer "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The Third Circuit has held that "[i]f an inmate is committed for an atypical period of time to undesirable conditions in violation of state law, that is clearly a factor to be considered in determining whether he has been subjected to atypical and significant hardship and, accordingly, whether due process protection has been triggered." *Griffin v. Vaughn*, 112 F.3d 703, 708-09 (3d Cir. 1997); *see also Randolph v. Wetzel*, 987 F. Supp. 2d 605, 619 (E.D. Pa. 2013).  However, administrative confinement, without more, does not deprive inmates of a constitutionally cognizable liberty interest.  *Griffin*, 112 F.3d at 709.

Here, Plaintiff alleges that state regulations mandate that he receives a parole revocation hearing within 120 days of his confinement.  However, that is not what the regulations dictate. Instead, New Jersey's regulations regarding parole revocation hearings state, "[e]xcept as provided herein, the revocation hearing shall be conducted within 60 days of the date the parolee was taken into custody as a parole violator."  N.J. Admin. Code § 10A:71-7.13(a).  "If the hearing officer requests a postponement of the revocation hearing, such postponement, if granted, shall not exceed 120 days from the original deadline determined pursuant to (a) above." N.J. Admin. Code § 10A:71-7.13(d).  Therefore, under state regulations, Plaintiff can be held for a maximum of 180 days, not 120 days, before he must receive a parole revocation hearing.  Since Plaintiff alleges that he has only been in confinement for five months while awaiting hearing, no regulations have been violated, and thus Plaintiff has not alleged sufficient facts to conclude that

11

he has been subjected to atypical or significant hardship in relation to any other similarly-situated individuals.[4]  Consequently, Plaintiff has failed to state a valid due process claim against the unnamed official.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's claims against NJSPB, Turner, and Brickhouse are DISMISSED without prejudice.  Plaintiff's claims against Moreno are DISMISSED with prejudice.  The Court will allow Plaintiff sixty (60) days from the date of filing of the Court's accompanying Order to amend the Complaint consistent with the holdings of this Opinion.

s/Freda L. Wolfson
**Freda L. Wolfson, U.S.D.J.**

Dated:  January 28, 2015

---

[4]     At the time of the filing of the Complaint, Plaintiff was presumably still detained at CRAF awaiting his hearing.  Since at the time of the writing of this Opinion, it has been more than a year since the filing of the Complaint, it is likely that Plaintiff has received his hearing, and has been found either in violation of his parole and sentenced to another term of imprisonment, or been released.  If Plaintiff is still confined at CRAF awaiting hearing, Plaintiff may, upon filing an Amended Complaint as directed by the Court below, move for an expedited proceeding.